**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| **ELAINE L. CHAO, Secretary of Labor,**<br>**United States Department of Labor,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GENERAL MAINTENANCE & FLOOR SERVICE, INC., a corporation, MICHAEL BAKRI, individually, and d/b/a GENERAL MAINTENANCE,**<br><br>**Defendants.** | **Civil No. 01-CV2374 (JRT/JSM)** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE SECRETARY'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, **ELAINE L. CHAO**, Secretary of Labor, United States Department of Labor, by counsel, submits this memorandum of law in support of her motion for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.

This action was filed on December 26, 2001, seeking to enjoin the individual and corporate defendants from violating the provisions of sections 6,7, 11 and 15 of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA" or "Act"), pursuant to section 17 of the Act; and to recover unpaid minimum wage and overtime compensation owing to defendants' employees, together with an equal amount in liquidated damages pursuant to section 16(c) of the Act. A default judgment was entered against the corporate defendant on March 15, 2004 [Docket Entry #40]. This motion seeks to establish Michael Bakri's liability as well.

The undisputed facts demonstrate that the individuals who performed floor cleaning services for General Maintenance & Floor Cleaning Service, Inc., and for Michael Bakri (Bakri), both individually and d/b/a/ General Maintenance, were employees within the meaning of the FLSA and that defendant Michael Bakri was an employer of those employees within the meaning of Section 3(d) of the Act during the entire investigation period, whether acting on his own behalf or that of the corporate defendant, and as such is liable for back wages for the entire period. Further, Michael Bakri failed to keep records of the hours worked by his employees as required by section 11(c) of the Act and the regulations issued thereunder. Finally, defendant Bakri failed to pay some of his employees the minimum wage required by the section 6 of the Act (29 U.S.C. 206) in some workweeks, and never paid overtime compensation required by section 7 of the Act (29 U.S.C. section 207) to any of his employees.

There being no genuine dispute of material fact, the Secretary is entitled to summary judgment on these issues as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986). To the extent the Court finds that summary judgment is appropriate on some but not all issues raised in this memorandum, the Secretary asks that partial summary judgment be granted on those issues and that the remaining issues be reserved for trial.

In support of this motion, the Secretary states as follows:

## STATEMENT OF FACTS

Beginning in 1989 [Bakri Deposition at pages 27-30] [The Bakri Deposition is submitted herewith as Exhibit 1. References to testimony therein are hereinafter referred to as "Dep. at __"], the corporate defendant performed floor cleaning services for supermarkets in the Minneapolis/St. Paul area. Although defendant Michael Bakri had been operating other cleaning

services contracts before that time, in 1997 he began managing the corporate defendant, which had been incorporated by his mother, Fatme Hoteit. [Dep. at 30.] Although he referred to himself as a "crew chief," Bakri's duties included hiring and training employees. Mr. Bakri also had an agreement to perform floor cleaning services at stores in Louisiana in 2000. [Dep. At 11.] Pay practices at the Louisiana operation are included in the instant action.

Defendants did not contract directly with the supermarkets, but rather subcontracted with other companies, such as BEL, HiTech and ICM, that held contracts with the supermarkets. [Transcript of Hearing Before Magistrate Judge Mayeron at 35-37.][1] [Hereinafter "Hearing at ____."] The work of floor cleaning was done by individuals usually hired by Mr. Bakri. [Dep. At 31.][2] The work was performed during the late night and early morning hours. [Dep. At 36.] Defendants never kept any record of the hours worked by their employees. [Hearing at 44.] Rather, they paid their employees "per clean," that is for each shift worked, resulting in overtime violations in weeks when employees worked more than forty hours. [Dep. At 35.] Bakri also withheld pay for the first pay period for some employees, resulting in minimum wage violations. [Dep. at 41.]

Although he has never filed a document responding directly to the complaint,[3] or filed any documents setting forth his affirmative defenses, it is clear defendant Bakri contends that the floor cleaners were independent contractors not covered by the FLSA. He also appears to assert that he is not an employer within the meaning of the FLSA. The undisputed facts establish that the floor cleaners were his employees and that he is liable for back wages as their employer.

---

[1] The complete transcript of the hearing on May 11, 2004 before Magistrate Judge Mayeron is contained in the Clerk's Office at Docket Entry #50. Courtesy copies of the transcript are being provided to the Court and to the defendant with the hard copy of this memorandum.

[2] Some hiring and training was done by Jose Martiz under Mr. Bakri's direction because Bakri did not speak Spanish. Dep. 56, 57.

[3] Bakri's deposition testimony makes it clear that the document he filed as an "Answer" in actuality tracked the Declaration filed by the investigator in the default proceedings. See Dep. at 47. Bakri never actually responded to the complaint.

## ARGUMENT

**I. Bakri was continuously an employer from at least 1997 until the he ceased operations in mid 2001.**

General Maintenance & Floor Service, Inc., was an enterprise within the meaning of section 3(s)(1)(A) of the FLSA. For all intents and purposes, Bakri ran the corporation, hiring, firing and training most of the employees, as well as answering the phone and making agreements and arrangements with the various contracting companies regarding services to be performed by the floor cleaners he provided. [See Dep. At 52-55, 58, 59.]

Bakri contends that the corporation went out of existence in the summer of 2000 and that he became a sole proprietor thereafter. However, Bakri's role never changed. He continued to run all aspects of the business [Dep. at 33], continued to use the corporate checking account [Dep. at 126, 137, 138], and his mother's credit card in the operation of the business. [Dep. at 135, 136.] Mr. Bakri was responsible for the entire operation for the whole period, before and after the corporation ceased. [Dep. at 57.]

Bakri never sent notice of the purported change in the structure of the business to the companies with whom he did business. [Dep. at 110, 111.]

Whether or not the corporation went out of business, Bakri continued to be an employer within the meaning of section 3(d) of the Act, in that he continued to act directly or indirectly in the interest of the employer, whether the corporate entity or himself, in relation to his employees, throughout the period covered by this litigation.

Bakri has admitted that he did not pay overtime compensation to any of the floor cleaners. [Dep. at 35.] Further, he has expressly admitted that they were not subject to any

exemptions under the Act. [Hearing at 42.] Rather, he has asserted, although not in any pleading, that they were independent contractors.

**II. The defendants are covered by the FLSA.**

Section 3(s)(1) of the FLSA (29U.S.C. 203(s)(1)) provides in pertinent part:

> "Enterprise engaged in commerce of in the production of goods for commerce" means an enterprise that -
>
> (A) (i) has employees engages in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods that have been moved in commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated.

Bakri has not disputed the fact that throughout the period covered by the investigation defendants' employees handled goods that had moved in interstate commerce and has expressly admitted that employees handled supplies and materials originating outside the state of Minnesota. For example, chemicals and equipment and supplies provided by one of the prime contractors came from Chicago. [Dep. at 57, 58.] Thus defendants met the requirements of section 3(s)(1)(A)(i) of the Act.

Bakri stated at the May 11, 2004 discovery hearing before Judge Mayeron that revenue during 1999 and 2000 was $12,000 per week. [Hearing at 38.] The total of $624,000.00 per year is well over the $500,000.00 threshold required by the FLSA. At the discovery hearing Bakri acknowledged gross revenues of $250,000 ($125,000 per quarter) in the first half of 2001. [Hearing at 30,33.] Bakri ceased when Bakri ceased doing business on July 23, 2001. [Dep. at 18.] Mr. Bakri's testimony demonstrated that the annual dollar volume of the business continued at a rate of at least $500,000.00 per year throughout period covered by this litigation, including

the time it operated as a corporation as well as during the period it continued in operation thereafter.

General Maintenance & Floor Service, Inc., was an enterprise engaged in commerce within the meaning of Section 3(s)(1)(A) of the Act. Whether as the manager of the corporation or a sole proprietor, Bakri was covered throughout the period of the investigation.

**III. The floor cleaners were employees within the meaning of the FLSA.**

The FLSA defines "employee" as "any individual employed by the employer." 29 U.S.C. § 203(e)(1). "To employ" under the FLSA, means "to suffer or permit to work." 29 U.S.C. § 203(g). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The Supreme Court has held that courts should apply these terms in light of the "economic reality" of the relationship between the parties. Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33 (1961). The factors in this economic realities test, although not exhaustive, include: (1) the degree of control over the manner in which the work is performed; (2) the worker's opportunity for profit or loss depending on his managerial skill; (3) the worker's investment in equipment or materials, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree or permanence of the working relationship; and (6) whether the service rendered is an integral part of the employer's business. Donovan v. DialAmerica, 757 F.2d 1376, 1382 (3rd Cir.1985) (quoting Donovan v. Sureway Cleaners, 656 F.2d 1368 (9th Cir.1981)). The economic realities test is not mechanical or formal in its application. The economic realities test looks to the specific facts of each case to determine whether an entity is an "employer." Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947).

"In seeking to determine the economic reality of the nature of the working relationship, courts do not look to a particular isolated factor but to all the circumstances of the work activity." Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1534 (7th Cir. 1987), cert. denied, 488 U.S. 898 (1987), rehearing denied, 488 U.S. 987 (1988). Following is a brief discussion of each of the foregoing factors:

**(1) The degree of control over the manner in which the work is performed**:

Bakri tells workers which stores to work in and what work they are to do. Individual store managers may supplement these instructions. [ Dep. at 53, 54.] However, the nature of the work requires little or no supervision. [Dep. at 64.]

**(2) The worker's opportunity for profit or loss depending on his managerial skill**:

The floor cleaners have no opportunity for profit or loss. Their only source of income is their wages. The concept of managerial skill is totally irrelevant to the nature of their work.

**(3) The worker's investment in equipment or materials, or his employment of helpers:**

The workers have no investment in equipment or materials. [Dep. at 64.] All necessary equipment and materials are provided either by the prime contractors or the stores in which the services are performed. [Dep. at 57, 63.] The floor cleaners do the work themselves and do not employ helpers.

**(4) Whether the service rendered requires a special skill:**

The floor cleaning requires no special skills.

**(5) The degree or permanence of the working relationship:**

Workers appear to have been employees at will and were not hired for one special job or project.

**(6) Whether the service rendered is an integral part of the employer's business.**

The corporate and individual defendants were in the business of providing floor cleaning services. The only way those services could be provided was through the use of employees who did the work. Clearly the work done by the individual floor cleaners was integral to their business.

Looked at in whole, the foregoing factors make it clear that the floor cleaners were not independent contractors by any standard. Although no one factor is determinative, here not one of the factors suggests in any way that these employees could be considered independent contractors.

**IV. Defendants did not keep the records required by the FLSA.**

Section 11(c) of the Act (29 U.S.C. 211(c)) requires employers to make, keep and preserve records of the wages and hours of their employees and other conditions and practices of employment, as prescribed in regulations issued by the Secretary. Those regulations are published at 29 C.F.R. Part 516. In particular, section 516.2(a)(5) requires the recording of the time and day of the week on which the employee's work week begins, and section 516.2(a)(7) requires the employer to keep a record of the hours worked each workday and the total hours worked each workweek.

Although defendant Bakri has asserted that many of his records were destroyed in a flood he also admits that he never kept records of the hours worked by his employees. [Hearing at 44.]

Thus Bakri, an employer within the meaning of section 3(d) of the Act in his role as a manager for the corporate defendant and in his role as a sole proprietor, has failed to comply with section 11(c) of the Act.

**V. Defendant Bakri failed to pay his employees overtime.**

Section 7 of the Act (29 U.S.C 207(a)) provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall pay any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above

> specified at a rate not less than one and one-half times the regular rate at which he is employed.

Although Bakri contends employees should not have needed more than a few hours a night to complete the work, he also admits he has no basis on which to establish their actual hours.[4] Further, he has admitted that the floor cleaners were not subject to any of the exemptions to the FLSA. [Hearing at 41.]

When shown a set of documents during his deposition that revealed employees had worked hours in excess of 40 by employees in a workweek in Louisiana, Bakri testified, ". . .I'm not going to dispute." [Dep. at 141.]

During discovery hearings, Bakri indicated that documents submitted to ICM contained hours worked information. [Hearing at 50.] ICM has now provided those documents, known as Job Work Orders. Many of the work orders were incomplete, containing insufficient information to draw conclusions about Bakri's pay practices. However, a number of them demonstrate that cleaners regularly worked more than five days a week and more than forty hours a week. [These are submitted herewith as Exhibit 2. Within this group exhibit, the documents are identified as ICM 1 through ICM 15.] The documents show, for example, that an employee identified as "Mario" worked seven days a week on at least two occasions, working over 49 hours in one week and nearly 53 ½ hours in another. [See ICM 1, ICM 2, ICM 3.] "Amelio" worked six 8 hour days. [ICM 5.] An employee named "Artemio" is shown to have worked at least 6 days a week in three different weeks, working eight hours a day on all but one of those days, thus working 48 hours in two of the weeks and 47 hours in the third. [ICM 7, ICM 8, ICM 9.] A number of the work orders don't identify the employees but show eight hour shifts seven days a

---

[4] Bakri does admit that all of the persons identified on Exhibit A to the Complaint were among his employees. [Hearing at 21,22.]

week. [ICM 10, ICM 11, ICM 12.] One shows eight and one half hour shifts. [ICM 13.] Two more sheets identify employees named "Angel" and "Israel." While daily hours are not shown for these employees, the records show that each worked at least six days a week. [ICM 14 and ICM 15.]

Bakri admits he paid only by the shift. The ICM records clearly demonstrate that employees frequently worked more than forty hours. Clearly, Bakri has failed to pay overtime compensation required by the Act.

## VI. Defendant Bakri failed to pay his employees the minimum wage in all weeks worked.

Section 6(a) of the FLSA requires that employees covered by the Act be paid the minimum wage, currently $5.15 per hour. Although it appears that the basic shift rate paid by defendants was sufficient to meet the minimum wage in most weeks, the record indicates that Bakri frequently withheld the pay for the first pay period. Bakri admits this practice, asserting that the wages were paid when the employee left. [Dep. at 41.] Bakri's has not provided any records establishing that he did pay the withheld amounts. However, wages must be paid when due, not weeks or months later. The FLSA does not permit such long term withholding of wages. See, Calderon v. Witovet, 999 F.2d 1101 (7th Cir. 1993).[5] The investigation also revealed that that Bakri failed to pay wages at all in some weeks to some employees in Louisiana.

[5] In Calderon v. Witovet supra, the Seventh Circuit did touch briefly on the measure of damages when wages are deferred but ultimately paid. Plaintiff has repeatedly sought records from Bakri regarding records of hours worked and wages paid, and has enlisted the court's assistance through motions and hearings to compel production. Mr. Bakri has not provided records to support payment of these "deferred" wages to support the assertion made in his deposition, and it should be assumed that none exist.

By failing to pay wages to pay wages when they became due or, in some instances, to pay wages at all, defendant Bakri has clearly violated the minimum wage provisions of the Act. See, Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 65 S.Ct. 895 (1945).

**VII. Back Wages.**

At the time of plaintiff's motion for default, plaintiff submitted the Declaration of Investigator Kristin Tout-Nava showing that defendants owed $67,386.37 in unpaid minimum wage and overtime compensation. The original Declaration and attachments were filed with the Court on May 6, 2002 as Docket Entry # 9 and are incorporated herein by reference. Courtesy copies of that Declaration, with attachments, are provided herewith to the Court and to defendant Bakri.

Although incomplete, the recently received ICM documents referred to above clearly establish that workers did regularly work in excess of 40 hours per week, which is consistent with the facts asserted in the Investigator Tout Nava's Declaration. Bakri has admitted that he did not keep hours records, that he withheld first pay period earnings and that he did not pay workers on an hourly basis, therefore failing to pay minimum wage and overtime compensation required by the Act.

It has long been established that when an employer does not keep accurate records of hours worked, the court should make all just inferences from the available information. As the Supreme Court stated in Anderson v. Mt. Clemens Pottery, 328 U.S. 680 (1946),

> When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on

> the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

328 U.S. 680, at 687, 688.

In view of Bakri's failure to maintain records of all hours worked, the court should accept the investigator's findings of $67,386.37 in back wages due.

**<u>VIII. Plaintiff is entitled to recover, as liquidated damages, an additional amount equal to the amount of unpaid minimum wage and overtime compensation.</u>**

Liquidated damages in an equal to the amount of back wages due employees is an appropriate remedy, under section 16(c) of the Act. 29 U.S.C. § 216(c). Under the FLSA, there is a strong presumption of double damages. <u>Elwell v. University Hospitals Home Care Services</u>, 276 F.3d 832, 842, fn 6 (6th Cir. 2002)(generally liquidated damages equal to the amount of unpaid compensation); <u>Walton v. United Consumers Club, Inc.</u>, 786 F.2d 3030, 310 (7th Cir. 1986)("double damages are the norm, single damages the exception"). The Portal-to-Portal Act provides an affirmative defense to liquidated damages for employers who acted in good faith and had reasonable grounds to believe that its conduct did not violate the FLSA. 29 U.S.C. § 260. The employer has the "substantial burden" of establishing that its conduct was both "in good

faith and reasonable." Elliott Travel, 942 F.2d at 968 *quoting* Mireles v. Frio Foods, Inc., 899 F.2d 1407, 1415 (5th Cir. 1990).

The purpose of liquidated damages is "not penal in its nature but compensation for the retention of a workman's pay which might result in damages too obscure and difficult to prove other than by liquidated damages." Brooklyn Savings Bank v. O'Neill, 324 U.S. 697, 702 (1945); *see also*, Elwell, 276 F.3d at 840. They compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due. Overnight Motor Co. v. Missel, 316 U.S. 572, 583-84 (1942). Liquidated damages are authorized in lieu of interest.

The Eighth Circuit has reiterated that an award of liquidated damages "is mandatory unless the employer can show good faith and reasonable grounds for believing that it was not in violation of the FLSA." Braswell v. City of El Dorado, 187 F.3d 954, 957 (8th Cir.1999).

Bakri can show no good faith basis for failing to pay his employees the minimum wage and overtime compensation required by the Act. Liquidated damages in an amount equal to the back wages due is appropriate here.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully submits that the undisputed facts establish that defendant Bakri was an employer subject to the Act during the entire period covered by the investigation. The undisputed facts further establish that defendants are covered by the FLSA and that they have failed to pay the required minimum wage or overtime compensation to their employees and that they have failed to keep and maintain accurate records of the hours worked by many of their employees, in violation of sections 6, 7 and 11 of the Act.

Defendant Bakri has been the responsible employer during the entire period covered by the investigation. The facts related to these issues are undisputed. Therefore, the Secretary is entitled to summary judgment as a matter of law.

Plaintiff therefore asks the court to enter an Order pursuant to section 17 of the Act enjoining Michael Bakri from violating the provisions of sections 6,7, 11 and 15 the Act; and, pursuant to section 16(c) of the Act, requiring Michael Bakri to pay $67,386.37 in unpaid minimum wage and overtime compensation owing to employees. Plaintiff also asks the court to order defendant, pursuant to Section 16(c) of the Act, to pay an additional amount equal to the back wages as liquidated damages.

Date: September 13, 2004

Respectfully submitted,

**Howard M. Radzely**
Solicitor of Labor

**JOAN E. GESTRIN**
Regional Solicitor

s/ Leonard A. Grossman
**LEONARD A. GROSSMAN**
Attorney
Attorneys for **ELAINE L. CHAO**,
Secretary of Labor, United States
Department of Labor, Plaintiff

**P.O. ADDRESS:**
Office of the Solicitor
U.S. Department of Labor
230 S. Dearborn St., Rm. 844
Chicago, Illinois 60604
Telephone: 312/353-5709