RECEIVED DEC 1 0 2004

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **ELAINE L. CHAO, Secretary of Labor, United States Department of Labor,** | ) | |
| **Plaintiff,** | ) | **Civil No. 01-CV2374 (JRT/JSM)** |
| **v.** | ) | |
| **GENERAL MAINTENANCE & FLOOR SERVICE, INC., a corporation, MICHAEL BAKRI, individually, and d/b/a GENERAL MAINTENANCE,** | ) | |
| **Defendants.** | | |

SCANNED
JUL 2 8 2005
U.S. DISTRICT COURT ST. PAUL

The defendant Michael Bakri responds to the Secretary of Labor's motion for summary judgment as follows:

1. The defendant, Michael Bakri strongly denies that he or General Maintenance and Floor Service violated the provisions of the Fair Labor Standards Act.

2. The defendant, Michael Bakri denies that he or General Maintenance and Floor Service owe any compensation for unpaid minimum wage or unpaid overtime pay.

The defendant, Michael Bakri worked as a subcontractor for Industrial Cleaning Management from December 2000 thru June 2001. At no time was any other person affiliated with the company General Maintenance except Michael Bakri during this time period.

I am sending you a copy of my Taxes/ W2 for the year 2001. This would show you how much I made working for ICM. And a copy of the contract.

I have looked over the exhibits that are marked job work orders for ICM. After taking a careful look at them I noticed something peculiar about the employees names that are listed as working 7 days in a week. I know these papers have been tampered with, because no one worked more than 6 days a week. If you consider an employee working 6 days x 7 hours, as everyone took a 1-hour break each night, ones total hours would be 42 hours per week. If you multiply 40 x $6.00 it totals $240.00 + 2 hrs. Overtime x $6.00 = $18.00

The total wages for the week would be $258.00 x 2 weeks = $516.00 total pay.

1. The work order for Blaine Rainbow, which has Mario working 7 days.

   a. There is a noticeable difference in the writing for Monday 2/26/01 compared to the rest of the days on the sheet.

Redacted

**SCHEDULE C** (Form 1040)

Department of the Treasury Internal Revenue Service (99)

# Profit or Loss From Business
(Sole Proprietorship)

▶ Partnerships, joint ventures, etc., must file Form 1065 or Form 1065-B.

▶ Attach to Form 1040 or Form 1041. ▶ See Instructions for Schedule C (Form 1040).

OMB No. 1545-0074

**2001**

Attachment Sequence No. 09

Name of proprietor: MICHAEL I BAKRI

Social security number (SSN): [redacted]-6931

A Principal business or profession, including product or service (see page C-1 of the instructions): CLEANING SERVICE

B Enter code from pages C-7 & 8 ▶ 812990

C Business name. If no separate business name, leave blank.

D Employer ID number (EIN), if any

E Business address (including suite or room no.) ▶ 1108 MEADOWWOOD DRIVE
City, town or post office, state, and ZIP code: BROOKLYN PARK MN 55444

F Accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ▶

G Did you "materially participate" in the operation of this business during 2001? If "No," see page C-2 for limit on losses ☒ Yes ☐ No

H If you started or acquired this business during 2001, check here ▶ ☐

## Part I Income

| | | Line | Amount |
|---|---|---|---|
| 1 | Gross receipts or sales. **Caution.** If this income was reported to you on Form W-2 and the "Statutory employee" box on that form was checked, see page C-2 and check here ▶ ☐ | 1 | 214,876 |
| 2 | Returns and allowances | 2 | |
| 3 | Subtract line 2 from line 1 | 3 | 214,876 |
| 4 | Cost of goods sold (from line 42 on page 2) | 4 | 129,152 |
| 5 | **Gross profit.** Subtract line 4 from line 3 | 5 | 85,724 |
| 6 | Other income, including Federal and state gasoline or fuel tax credit or refund (see page C-3) | 6 | |
| 7 | **Gross income.** Add lines 5 and 6 ▶ | 7 | 85,724 |

## Part II Expenses. Enter expenses for business use of your home only on line 30.

| | | Line | Amount | | | Line | Amount |
|---|---|---|---|---|---|---|---|
| 8 | Advertising | 8 | 750 | 19 | Pension and profit-sharing plans | 19 | |
| 9 | Bad debts from sales or services (see page C-3) | 9 | | 20 | Rent or lease (see page C-4): | | |
| | | | | a | Vehicles, machinery, and equipment | 20a | |
| | | | | b | Other business property | 20b | |
| 10 | Car and truck expenses (see page C-3) | 10 | | 21 | Repairs and maintenance | 21 | |
| 11 | Commissions and fees | 11 | | 22 | Supplies (not included in Part III) | 22 | |
| 12 | Depletion | 12 | | 23 | Taxes and licenses | 23 | |
| 13 | Depreciation and section 179 expense deduction (not included in Part III) (see page C-3) | 13 | 63,316 | 24 | Travel, meals, and entertainment: | | |
| | | | | a | Travel | 24a | |
| | | | | b | Meals and entertainment | | |
| 14 | Employee benefit programs (other than on line 19) | 14 | | c | Enter nondeductible amount included on line 24b (see page C-5) | | |
| 15 | Insurance (other than health) | 15 | | | | | |
| 16 | Interest: | | | d | Subtract line 24c from line 24b | 24d | |
| a | Mortgage (paid to banks, etc.) | 16a | | 25 | Utilities | 25 | |
| b | Other | 16b | | 26 | Wages (less employment credits) | 26 | |
| 17 | Legal and professional services | 17 | | 27 | Other expenses (from line 48 on page 2) | 27 | 7,526 |
| 18 | Office expense | 18 | | | | | |

| | | Line | Amount |
|---|---|---|---|
| 28 | **Total expenses** before expenses for business use of home. Add lines 8 through 27 in columns ▶ | 28 | 71,592 |
| 29 | Tentative profit (loss). Subtract line 28 from line 7 | 29 | 14,132 |
| 30 | Expenses for business use of your home. Attach **Form 8829** | 30 | |
| 31 | **Net profit or (loss).** Subtract line 30 from line 29. ● If a profit, enter on **Form 1040, line 12,** and **also** on **Schedule SE, line 2** (statutory employees, see page C-5). Estates and trusts, enter on Form 1041, line 3. ● If a loss, you **must** go to line 32. | 31 | 14,132 |

32 If you have a loss, check the box that describes your investment in this activity (see page C-6).
● If you checked 32a, enter the loss on **Form 1040, line 12,** and **also** on **Schedule SE, line 2** (statutory employees, see page C-5). Estates and trusts, enter on Form 1041, line 3.
● If you checked 32b, you **must** attach Form 6198.

32a ☐ All investment is at risk.
32b ☐ Some investment is not at risk.

**For Paperwork Reduction Act Notice, see Form 1040 instructions.** Schedule C (Form 1040) 2001

DAA

EXHIBIT - , -

**ICM**

a division of Rug Doctor

# SUBCONTRACTOR AGREEMENT

Parties: This agreement is entered into between Contractor Rug Doctor, L.P., dba ICM, hereinafter "ICM" and undersigned Subcontractor hereinafter "Subcontractor and is effective on the date signed by ICM.

1. Service: Subcontractor agrees to furnish at its own expense, all supervision, labor, vehicles, equipment, materials and documented paperwork to provid maintenance, floor cleaning service or any other services outlined by ICM (hereinafter "Services") as specified in the Store Service Agreement signed by Subcontractor, for each Customer account being serviced by Subcontractor.

2. Independent Subcontractor: Subcontractor shall be fully responsible for and shall perform all such Services as an independent Subcontractor only and not as an agent, employee or co-venturer with ICM and nothing herein shall be construed to be inconsistent with this relationship or status. Subcontractor is not to assign or use other subcontractors to fulfill the Services.

3. Payment: Upon satisfactory completion of all required Services performed by Subcontractor during each specified time period, and submission of a signed work order to ICM on or before the Friday immediately following the week ending date, ICM shall pay Subcontractor the contract fee per time period specified. The contract fee will be paid to Subcontractor weekly, two weeks in arrears. Payment of fees will be held up one week for each week a signed work order is submitted late.

4. Deductions from Payments: Subcontractor agrees that any loan advances by ICM on Subcontractor's behalf, may be deducted by ICM from any fees due Subcontractor under this contract. If Subcontractor or his employees or agents, damage, steal or write uncollectible checks to an ICM Customer, ICM will have the right to compensate such Customer by withholding from fees due Subcontractor. If Services performed by Subcontractor are found to be below acceptable standards of ICM or its Customers or not in accordance with the Store Service Agreement(s), or if because of poor performance Subcontractor is unable to or not permitted to bring the Customer account up to acceptable standards, the Subcontractor will bear the cost of having the Customer account brought up to acceptable standards by means of, but not limited to, a deduction from fees due Subcontractor. If Customer account(s) requires a premature, scrub or strip from the timing as set forth in the Store Service Agreement(s) then Subcontractor will bear all costs even though work orders have been signed by Customer, and the cost will be deducted from fees due Subcontractor.

5. Insurance: Subcontractor shall obtain, pay for, and keep in force throughout the effective term of this Agreement the following minimum insurance coverages and shall obtain same prior to commencing Services. Subcontractor will not be permitted to commence any Services until proof of required insurance is given to ICM.

   a) General Liability - Commercial General Liability or Comprehensive General Liability insurance, on "occurrence" form, having a combined single limit coverage of not less than $500,000 and endorsed to include contractual liability, personal injury, completed operations, and broad form property damage liability, insuring Subcontractor against liability arising out of the business operations of Subcontractor and the Services to be performed under this Agreement. The coverages, provisions and limits of this policy shall not limit the liability of Subcontractor under any other provisions of this Agreement. If, in the reasonable opinion of ICM, the amount of liability coverage required is not adequate, Subcontractor shall increase said insurance limits as required by ICM.

   b) Automobile Liability - Combined single limits of not less than $500,000 which shall include owned autos, nonowned autos and hired autos, and shall insure against death or personal injury, and property damage caused by Subcontractor in the course and scope of providing Services.

   c) Workers' Compensation - Workers' Compensation insurance as required by the law of the state and/or Employer's Liability insurance in an amount not less than $100,000 for each state in which Subcontractor's employees will be engaged in any work under this Agreement.

   d) Blanket Fidelity Bond - Against liability for theft in the amount of $2,500 for any one theft.

ll policies of insurance required under this paragraph shall provide that they may not be cancelled nor the coverage materially changed without thirty (30) days written otice to ICM. The policy of insurance for General Liability shall name ICM as additional insured. All policies shall be primary, and ICM shall incur no liability to e insurer for payment of premiums. ICM shall have and reserves the right to pay for any required insurance for Subcontractor and to deduct the costs of the emiums from fees due Subcontractor. If the premium paid by ICM on behalf of Subcontractor exceeds the fees due Subcontractor, then Subcontractor agrees to imburse ICM. Certificates of insurance, endorsed as specified herein shall be given to ICM for all policies required to be obtained prior to Subcontractor undertaking rformance of any Services for the Customer account. In the unlikely event that Subcontractor commences work before obtaining insurance coverage, a penalty arge of five percent (5%) of the fees due Subcontractor for Services will apply for all work performed that is not under insurance coverage. A penalty charge is t insurance and is not refundable.

EXHIBIT 9

6. **Injuries:** Subcontractor shall notify ICM promptly of all personal injuries and property damage in any way arising out of or in the course and scope of performance of Services under this Agreement. ICM reserves the right to settle any personal injury claims.

7. **Consents of Subcontractor, Etc.:** (1) Subcontractor consents to an investigation by ICM of his/her public records including police records, if applicable, and (2) Subcontractor, employee or agent consents in advance to a reasonable search of his person and property when leaving ICM contracted premises at the end of any work period.

8. **Restitution Clause:** Subcontractor agrees in cases of stolen merchandise or monies, involving Subcontractor, his employee or agent to make full restitution to ICM and/or its Customer. ICM may hold such full restitution from fees due Subcontractor.

9. **Hold Harmless and Indemnification:** Subcontractor agrees to indemnify ICM and its Customer against and hold them and each of them harmless from all claims, suits, proceedings, damages, judgements, and settlements of any nature for property damage or loss, bodily injuries and death caused by any act or omission of the Subcontractor its agents or employees, and to defend at Subcontractor's expense such claims, suits and proceedings, including payment of court costs, attorneys' fees, and all other expenses arising out of the performance of this Agreement. Indemnification of monies may be deducted from fees due Subcontractor.

10. **Termination or Cancellation:**

a. This Contract may be terminated by either party for any reason upon five (5) days prior written notice to the office personally delivered or sent by prepaid first class certified mail.

b. This Contract may be terminated by ICM upon one (1) day's notice if:

I) Subcontractor fails to perform Services to the satisfaction of ICM or Customer.

II) Subcontractor shall violate any provision of this Agreement.

III) Subcontractor fails to obtain required insurance or if Subcontractor's insurance is materially amended to reduce coverage or policy limits, or is cancelled.

IV) Upon the death or disability of Subcontractor.

V) Subcontractor assigns this Agreement.

11. **Non-Competition:** Subcontractor agrees and covenants, because of his access to and knowledge, acquired solely as a result of this Agreement from ICM and/or its Customers accounts and other confidential business information related thereto, that Subcontractor shall not, during the effective term of this Agreement and for a period of twenty-four (24) months after its termination or the termination of every Store Service Agreement which Subcontractor shall have executed with ICM, whichever termination date shall last occur, either directly or indirectly in any individual representative or participatory capacity whether as owner, stockholder, partner, joint venture, employer, employee, director, agent or any other capacity, solicit or interfere in any way with any Customer account then being serviced by ICM or which was a Customer account at any time during the term of Subcontractor's Agreement with ICM, within a hundred (100) mile radius of any and all services performed by Subcontractor according to Store Service Agreement. Further Subcontractor agrees that if any such ICM Customer accounts are or were part of a chain, the covenants and undertakings made and given by Subcontractor under this paragraph shall apply to all stores within chain (s) in each and every district, area or zone then serviced by ICM or as which it provided service to any location of such chain and said district, area or zone during the term of each and every Store Service Agreement and Subcontractor Agreement between Subcontractor and ICM. "For purpose of definition, the following terms shall have the following meanings: "Chain" means any Customer Account having five (5) or more locations. "District, Area, Zone" means the smallest group of stores in a chain under the management of a single individual having that level of authority immediately superior to a store manager.

2. **Remedies for Breach of Confidentiality and Non-Competition:** Subcontractor does hereby acknowledge that money alone would not adequately compensate ICM for the damage to its business as a result of the breach by Subcontractor of the Non-competition clause of this Agreement, and Subcontractor therefore agrees that in the event of any such breach by Subcontractor, ICM shall be entitled to injunctive relief, both preliminary and permanent, for the enforcement thereof, in addition to all other remedies available to it at law or in equity shall be entitled to injunctive relief for the enforcement thereof, with all attorney fees and court costs to be paid by Subcontractor.

**Enforcement:** If any notice or other agreement upon time period of any provision hereof shall be held by a court of competent jurisdiction to be inconsistent with a legally acceptable period then such stated time period shall be deemed amended to bring it into conformity with the law and the provision shall be valid and enforceable as amended. It is agreed that the validity, performance, interpretation and effect of this Agreement shall be governed by the laws of the State of Tennessee, or in the sole and exclusive option of ICM, by any state where work shall be performed by Subcontractor pursuant to this Agreement.

Redacted

14. **Binding Agreement:** This Subcontractor Agreement supersedes all previous Subcontractor Contract(s) or Agreement(s) entered into by and between IC and Subcontractor, and applies to all stores for which Subcontractor performs Services.

**CONTRACTOR**

Rug Doctor L.P. DBA ICM
Business Name

1004 Sevier Ave, Knoxville, TN 37920-1865
Address

Signature Date

Print or Type Name Title

**SUBCONTRACTOR**

GENERAL MAINTENANCE & FLOOR SER
Business Name

1108 MEADOWWOOD DR. BROOKLYN PARK, 554
Address

[redacted] - [redacted] - 6931
Tax Id # or S.S. #

Michael Bakri
Signature Date

MICHAEL BAKRI OWNER
Print or Type Name Title

*The terms, conditions, warranties and promises of Subcontractor contained in this Agreement, as well as Subcontractor's prompt and satisfactory performance of its obligations and responsibilities created by Agreement, are personally guaranteed by MICHAEL BAKRI, hereinafter referred to as "Guarantor." If Subcontractor defaults in the performance of its obligations under this Agreement according to its terms and conditions, Guarantor shall pay to ICM all damages, costs, and expenses, including reasonable attorney fees, that ICM is entitled to recover from Subcontractor by reason of such default. This guarantee shall, continue in force until all obligations of Subcontractor under this Agreement have been satisfied. The place of origin of this contract is Knoxville, TN.

MICHAEL BAKRI
Print or Type Name of Guarantor

41197

Michael Bakri
Signature of Guarantor

Redacted

**GENERAL MAINTENANCE & FLOOR SERVICE INC**
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6213

17-7000/2910 10
1851910267

April 2, 01 DATE

PAY TO THE ORDER OF Artemio Moreno $ 800.00

Eight hundred & 00/100 DOLLARS

HARLAND 2000

Security Features Details on Back.

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

FOR 3/4 - 3/17/01 (WB) Michael Bakri MP

⑆[redacted]⑆ [redacted]0267⑈ 6213 ⑈0000080000⑈

---

**GENERAL MAINTENANCE & FLOOR SERVICE INC**
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6214

17-7000/2910 10
1851910267

April 2, 01 DATE

PAY TO THE ORDER OF Angel Bonilla $ 620.00

Six hundred twenty & 00/100 DOLLARS

HARLAND 2000

Security Features Details on Back.

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

FOR 3/9 - 3/22/01 (11) Michael Bakri MP

⑆[redacted]⑆ [redacted]0267⑈ 6214 ⑈0000062000⑈

---

☐ TAX DEDUCTIBLE ITEM $____

**GENERAL MAINTENANCE & FLOOR SERVICE INC**
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6381

17-7000/2910 10
1851910267

May 7, 01

Israel Galarza

Three hundred fifty & 00/100

| | |
|---|---|
| BAL. FOR'D | |
| THIS ITEM | 350.00 |
| BALANCE | |
| | |
| DEPOSIT | |
| OTHER | |
| BAL. FOR'D | |

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

4/1 - 4/14/01 (12)

⑆[redacted]⑆ [redacted]0267⑈ 6381

NOT NEGOTIABLE

TRAVELERS EXPRESS COMPANY, INC. DRAWER
P.O. BOX 9476
MINNEAPOLIS, MN 55480
1-800-542-3590

DATE/AMOUNT

9626960192 05/03/01
168 YN $300.00

70551000190002 41

Israel Galarza EMPLOYEE

PLEASE SEE TERMS ON REVERSE SIDE

717 (9/00) 700/14000

KEEP THIS STUB FOR YOUR RECORDS

9626960192

▼DETACH HERE▼

2. The work order for Woodbury Rainbow, which has Artemio working 7 days.

a. There is a noticeable difference in the writing for Thursday 3/15/01 compared to the rest of the days on the sheet. I can even see someone else's name written underneath it, beginning with the letter M.

I am sending you a photocopy of what these men were paid. As you can see they were paid more than minimum wage, even working a six-day workweek for the days in question.

After looking over the pay stubs for the employees in question I believe I have demonstrated that the Employees were paid more than minimum wage and when necessary were paid overtime. So in fact I am not in violation of the law as the Secretary of Labor claims.

I would like to request an extension, as I will be out of the country until March or April of 2005.

Defendant,

Michael Bakri

Michael Bakri

****************** -COMM. JOURNAL- ******************** DATE DEC-13-2004 ***** TIME 17:12 *** P.01

MODE = MEMORY TRANSMISSION START=DEC-13 17:09 END=DEC-13 17:12

FILE NO.= 186

| STN NO. | COM | ABBR NO. | STATION NAME/TEL.NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ☎ | 9-13123535698 | 007/007 | 00:02'27" |

-US DISTRICT COURT -

************************************ -612 848 1192 - ***** - - *********

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Chambers of
JANIE S. MAYERON
U.S. Magistrate Judge

610 U.S. Courthouse
316 North Robert Street
St. Paul, Minnesota 55101
Telephone: (651) 848-1190
Fax: (651) 848-1192

## FAX COVER SHEET

Date: December 13, 2004 Time: 4:10 p.m.

To: Leonard Grossman, Esq. 312-353-5698

No. of Pages Being Transmitted (Including Cover Sheet): 9

Elaine Chao v. Michael Bakri
Civil 01-2374 (JRT/JSM)

12/10/04 Submission by Michael Bakri

*************** -COMM. JOURNAL- ****************** DATE DEC-13-2004 ***** TIME 17:14 *** P.01

MODE = MEMORY TRANSMISSION START=DEC-13 17:12 END=DEC-13 17:13

FILE NO.= 188

| STN NO. | COM | ABBR NO. | STATION NAME/TEL.NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ≈ | 9-13123535698 | 002/002 | 00:00'44" |

-US DISTRICT COURT -

************************************** -612 848 1192 - ***** - - *********

Redacted

GENERAL MAINTENANCE & FLOOR SERVICE INC
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6213

17-7000/2910 10
1851810267

April 2, 01 DATE

PAY TO THE ORDER OF Artemio Moreno $ 800.00

Eight hundred & 00/100 DOLLARS

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

FOR 3/4 - 3/17/01 (08) Michael Bakke

[redacted] [redacted] 0267 6213 0000080000

GENERAL MAINTENANCE & FLOOR SERVICE INC
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6214

17-7000/2910 10
1851810267

April 2, 01 DATE

PAY TO THE ORDER OF Angel Bonilla $ 620.00

Six hundred twenty & 00/100 DOLLARS

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

FOR 3/9 - 3/22/01 (11) Michael Bakke

[redacted] [redacted] 0267 6214 0000062000

☐ TAX DEDUCTIBLE ITEM $

GENERAL MAINTENANCE & FLOOR SERVICE INC
1108 MEADOWWOOD DR
BROOKLYN PARK, MN 55444

6381

17-7000/2910 10
1851810267

May 7, 01

Israel Galarza

Three hundred fifty & 00/100

| | |
|---|---|
| BAL. FOR'D | |
| THIS ITEM | 350.00 |
| BALANCE | |
| DEPOSIT | |
| OTHER | |
| BAL. FOR'D | |

TCF NATIONAL BANK 5205 Central Ave. N.E. Fridley, MN 55421 EXPRESS TELLER

4/1 - 4/14/01 (12)

[redacted] [redacted] 0267 [redacted] 6381

NOT NEGOTIABLE

TRAVELERS EXPRESS COMPANY, INC. DRAWER
P.O. BOX 9476
MINNEAPOLIS, MN 55480
1-800-642-3590

DATE/AMOUNT

9626960192 05/03/01
168 YN $300.00

70551000190002 41

Israel Galarza EMPLOYEE

PLEASE SEE TERMS ON REVERSE SIDE

KEEP THIS STUB FOR YOUR RECORDS

9626960192

▼DETACH HERE▼

Michael Bakri
1108 Meadowwood Dr
Brooklyn Park, MN 55444

U.S. Magistrate Judge Janie S. Mayeron
U.S. District Court
700 Federal Building
336 North Robert Street
St. Paul, MN. 55101