UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

RECEIVED
05 AUG 22 PM 4:5
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

Plaintiff,

Request for Objection of the Court Summary of Judment

Case N° CV 2001
CV-2374
JRT

v.

General Maintenance & Floor Service, Inc., a corporation, MICHAEL BAKRI, individually, and d/b/a General MAINTENANCE,

Defendants.

RECEIVED
05 AUG 23 PM 2:48
CLERK, U.S. DIST COURT
MINNEAPOLIS, MN

State of Minnesota
County of Hennepin

MICHAEL BAKRI being duly sworn upon oath states as follows:

I am the defendant in this case and all these records are true and correct and I am familiar with the case.

SCANNED
AUG 23 2005
U.S. DISTRICT COURT MPLS

I, Michael Bakri did not perform the book keeping duties. All the paperwork I am submitting came from Fatmeh Hoteit in Beirut, Lebanon.

LeAnne Bakri was hired to do all the record keeping, hours, paychecks, etc.

There are too many records to go thru in such a short time. The evidence I am submitting is only a part of the picture.

It is unfair that the Plaintiff can take a one week ICM invoice and apply it to twenty-three employees. Putting everyone in the same category, when each individual had different days, hours and wages paid.

I am submitting Artemio Moreno's paperwork as an example of the paperwork I brought back from Beirut, Lebanon. Each employee must be done to show their individual days, hours, wages paid. See exhibit 17.

In regards to plaintiff's exhibits 1-15. ICM work orders and the payroll period for General Maintenance are not the same. The days overlap, so the week is broken up each time. As the days do not coincide, the court was not able to determine our payroll practices.

You must see time-in/time-out/call-in records to get the employees actual hours worked per pay-roll. Payroll was never based on the ICM work orders.

The work orders for ICM were used for ICM's billing practices when invoicing Rainbow Foods and paying General Maintenance.

Very few ICM work orders had any hours on employees listed on them. All they were required to have was a manager's signature nightly and a store stamp weekly.

I am enclosing the original documents to show an example. See exhibits 1-10. I am enclosing three of the subcontractor agreements as exhibit 13, 14 v 15. This verifies that they were not hired to work more than the required 7 hours.

Michael Bakri requests from the court to reconsider the Report and Recommendations because records have now been obtained from Lebanon to better defend the case. Before this time we were not able to show paper work proofs. From these records we conclude that there is genuine dispute of the Summary judgement

Further your affiant sayeth not.

Michael Bakri

Michael Bakri
1108 Meadowwood Dr
Brooklyn Park, MN
55444

763 503-7166

Subscribed and Sworn to me before this 22nd day of August, 2005.

Michael Bakri

Subscribed before me this 23rd day of August 2005.

Deborah D. Bell
Notary Public

DEBORAH D. BELL
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES JANUARY 31, 2010

UNITED STATES DISTRICT
FOR THE DISTRICT OF MINNESOTA

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

Plaintiff,

V.

GENERAL MAINTENANCE &
FLOOR SERVICE, INC and
MICHAEL BAKRI, individually
And d/b/a General Maintenance

Defendants.

CIVIL NO. 01-2374 (JRT/JSM)

DEFENDANTS OBJECTION TO
REPORT AND
RECOMMENDATION

The defendant Michael Bakri objects, to the report and recommendation of the court, dated July 28th, 2005.

Objection #1
C. DEFENDANT DID NOT KEEP RECORDS REQUIRED BY THE FLSA.

During the years of 1997, 1998, 1999 and 2000, Michael Bakri was working for General Maintenance & Floor Service, Inc. as an Operations Manager.

Bookkeeping, such as payroll records which included (5) Time of day and day of week on which the employee's workweek begins, (7) Hours worked each work day and total hours worked each workweek, were not done by Michael Bakri.

The Bookkeeping was kept by LeAnne Bakri who was in charge of business records during the years 1997, 1998, 1999, and 2000.

The records were taken to Beirut, Lebanon when Mrs. Hoteit, the President of the General Maintenance & Floor Service Inc. moved there. Michael Bakri returned from Beirut, Lebanon with the records.

Some of the records were destroyed dated December 2000- July 2001. Most of these records were for Michael Bakri d/b/a General Maintenance.

Objection #2
D. BAKRI FAILED TO PAY OVERTIME

Michael Bakri admitted that he had no way to establish the actual hours worked by the workers because he had none of the records in his possession on May 11, 2004.

Michael Bakri paid his workers by the shift. This correct as a shift of seven hours was agreed upon by General Maintenance & Floor Service and the workers, which was in the subcontractor agreement? (See exhibits 13, 14, and 15)

Michael Bakri did not dispute records that revealed that workers had worked more than forty hours in a workweek in Louisiana. Michael Bakri had no records to compare them to at the time of the deposition, which was why he was unable to dispute them on May 11, 2004

Michael is unaware of any records that revealed that workers had worked more than forty hours in a workweek in Louisiana. Per our records, Louisiana workers were scheduled for 4hr, 6hr, and 7hr shifts. Some of the workers were paid for hours they weren't even working. Michael received reports that some of the workers would be walking out of the store for two hours a night. (See exhibits 17&18)

Documents submitted to ICM, titled Job Work Orders, contained information on hours worked, others did not contain any information on hours worked, others contained information on the hours workers were picked up from their home at night and dropped off at their homes in the morning. Some of the ICM work orders were used by two different people. The D.O.L. cannot use the ICM Job Work Orders as time cards for the workers as they are not time cards. General Maintenance and Service's payroll period does not even coincide with the ICM work orders.

Michael Bakri disputes that the workers had twenty-three hours of overtime in a workweek. Some workers had average hours of (7) seven hours per night – six nights per week. Others had four hours per night – (6) six days a week, while others had (7) seven hours per night (5) five days per week. Each worker was different, depending on his job title. Some workers were cleaners; others were wax crew, while others were helpers. All the workers cannot be put in one category.

Objection #3
E. BAKRI FAILED TO PAY MINIMUM WAGE IN ALL WEEKS WORKED

Michael Bakri is not aware of any worker not getting paid wages owed to them. (Minimum wage or other) Bakri was never shown any evidence to prove the D.O.L.'s allegations. Michael Bakri would need the names of these people to prove otherwise. (Store location, days worked, wages owed, etc.) Not just allegations from the D.O.L. stating that one worker testified, another worker indicated, someone said, etc, etc.

Objection #4

F. BACK WAGES

Michael Bakri did not fail to keep records. They were in the owner's possession in Beirut, Lebanon. Other records were destroyed in flood which was beyond Michael's control. Michael now has some records to dispute the allegations of the D.O.L. The records were obtained in Beirut, Lebanon and brought back here.

An example of paid wages, which the D.O.L. claims were not paid are submitted as evidence. Exhibit #19 Jorge Ruiz Camacho and Exhibit #20 Angel Bonilla Perez. The dates these two people worked are complete. The D.O.L. does not even have the correct start and end dates.

Objection #5

G. PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES

Michael Bakri objects to owing the workers for liquidated damages. As there were no unpaid wages. All proofs can be submitted with a little more time because the records are now here in the states.

Conclusion

The summary judgment was based solely on the D.O.L.'s argument because Michael Bakri previously had no proof to defend the case. Based on the records obtained employees worked for 4, 6, or 7 hours not 8 or 10 hours as the D.O.L. is saying.

For this reason I kindly request from the court to reconsider its recommendation for Summary Judgement.

Sincerely,

Michael Bakri

Michael Bakri
1108 Meadowwood Drive
Brooklyn Park, MN 55444
(763)503-7166

# *HI TECH COMMERCIAL SERVICES*

12-21-00

Michael

I have checked with the Veterans store and your staff did not scrub the backroom last night. I spoke to Bruce at 11:00pm last night to tell him that 3 back rooms needed to be scrubbed. As you know Tchoupitolas and Powers has be done every Wednesday and Veterans wanted to have theirs done since it has been just cleaned with the stock. I also heard that the crew at Airline quick the other night and also the one at Veterans. I am in the process of trying to find someone for your replacement of which we spoke about the other day. One of the stores is Tchoupitoulas and the other is Airline. Mr. Songy called the other morning saying he wanted a change since the crew is not doing a good job and that they walked out of the store for about 2 hours on Tuesday.

Here are some of the items I told Bruce that needed to be done tonight at Tchoupitoulas. Clean the edges along the sugar aisle and along the green boxes from the liquor aisle to the dairy, clean the stairs and the scanning room. I feel that Bruce does not go to this store on a regular basis since every time I speak to him he never mentions it or if He had checked certain things. Most of the time his response is I did not have a chance to get there. I told him this morning to go check to make sure that the back room got scrubbed last as of the time of this letter I do not know if it has been done.

Mr. Hipps would like to have part of the back room scrubbed tonight about 1:00am. The only area is by the equipment room and just around that corner. This area is always dirty and since it did not get done last he would just area cleaned which is a very small area.

Airlines in the cafe area please have them clean it with just plain water because it is starting to have a film build up.

I know that you are coming down here after Christmas at this I will like to meet with you to discuss what plans you have for your future down here.

Should you have any questions concerning these issues please call me.

Thanks

Frank

cc: Sam

Exb-18-

HI TECH COMMERCIAL SERVICES

12-13-00

To all contactors

On November 27,2000 I mentioned that all of your staff should check with the manager before they leave the store to go home. It has come to my attention that as of the date of this memo very few are doing this. I can not stress the importance of this and I suggest that you inform your staff of this immediately. I have been checking with the managers to see if this been done on a nightly basis.

Based on what I have found over the past couple of weeks we can correct some minor problems just by having them check with the manager before the leave. I had to call several people to a couple of stores to clean some missed areas. I hope that we can improve in this area.

Should you have any questions please call me.

Thanks

Frank

Frank

cc: Sam

Exb 17

Jorge Ruiz Comacho

Pay Period 2/21 - 3/8/01

Worked 5 days on wax crew & Quit.
Amt. Pd. $ 250.00 Money Order # 96789397496
PAID IN FULL 3/19/01

Jorge Ruiz

TRAVELERS EXPRESS COMPANY, INC. DRAWER
P.O. BOX 9476
MINNEAPOLIS, MN 55480
1-800-542-3590

DATE/AMOUNT

9678939749
096 YN

03/19/01
$250.00

73965339710001
(PD. IN FULL)

41

PLEASE SEE TERMS ON REVERSE SIDE

EMPLOYEE

96789397496

▼DETACH HERE▼

KEEP THIS STUB FOR YOUR RECORDS

7/8 (12/00) 7001/4000

Exhibit # 19

Angel Bonilla Perez
2/21/01 – 4/3/01

wax crew
(4 hrs. per nite)

| Pay Period | Days | Pd | Date |
|---|---|---|---|
| 2/21 – 3/8/01 | 11 days | $600.00 | 3/19/01 money orders |
| 3/9 – 3/22/01 | 11 days | $620.00 | 4/2/01 |
| 3/21 – 4/03/01 | 13 days | $748.00 | 4/16/01 |

(PD. IN FULL)

(2 Money Orders + 2 checks)

Exhibit # 20