**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

**ELAINE L. CHAO, Secretary of Labor,**
**United States Department of Labor,**

**Plaintiff,**

**Civil Action No. 01-CV2374 (JRT/JSM)**

**v.**

**GENERAL MAINTENANCE & FLOOR SERVICE, INC., a corporation, MICHAEL BAKRI, individually, and d/b/a GENERAL MAINTENANCE,**

**Defendants.**

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Elaine L. Chao, Secretary of Labor, United States Department of Labor, by counsel respectfully submits this Memorandum in opposition to defendant's objections to the Report And Recommendation of the Magistrate Judge.

Local Rule 72.2(b) requires that a party objecting to the proposed findings and recommendations of a Magistrate Judge must serve and file specific, written objections to the proposed findings and recommendations. Under appropriate circumstances the District Judge may consider additional evidence; that determination is within the sound discretion of the Court. In the instant matter, there is no basis to do so.

Close reading of Defendant's submissions reveals that his objections are not based on the record that was before the Magistrate Judge at the time of her decision but rather on evidence he claims he has now obtained from Lebanon. In reality, he seeks to reopen the

case for submission of additional evidence in an attempt to create a dispute of fact. However, he has made no showing that he could not have obtained this additional evidence during the three years between the time the case was filed and the close of briefing on the Secretary's motion for summary judgment.

Although Defendant testified that his mother, Mrs. Hoteit, left for Lebanon in "June or September, 2000,"[1] some of the materials relate to time periods and aspects of the business that occurred in 2001 and other materials relate to business activities that occurred in Louisiana. Defendant has long maintained that Mrs. Hoteit had no interest or involvement in his Louisiana operations. See, *e.g*., Bakri Deposition at 19. Further, some of the arguments and material he now submits contradict his own sworn testimony and prior argument and some of the documents appear on their face to have been reconstructed or created after the fact.

The time for production of documents in this case has long passed. Discovery has long been closed. This case was filed in December, 2001. Although Mr. Bakri had provided some documents before the litigation began, and had previously been served with an administrative subpoena, and the Defendant repeatedly agreed to produce additional documents voluntarily, he failed to do so. Discovery was originally scheduled to be completed by May 1, 2001. Through various modifications discovery was eventually

[1] Bakri Deposition at 10. Bakri says there he doesn't know whether she took the documents with her at that time. He does not indicate when the documents were supposedly sent to Beirut. The complete Bakri Deposition is contained in the court's record at Document 66. Excerpts referred to specifically herein are submitted herewith as Exhibit A.

extended to June 15, 2003. During that period and thereafter, the Secretary found it necessary to file several discovery motions and the Magistrate Judge not only repeatedly directed the Defendant to comply with the discovery requests but also assessed monetary sanctions. Defendant Bakri has also failed to comply with those sanctions.

Eventually the Magistrate Judge found it necessary to hold a hearing to resolve some of discovery disputes. At that time she personally examined the defendant under oath in an attempt to clarify the late and incomplete responses to the discovery that Bakri had filed and to determine what additional documents were in existence. [Document 50, Transcript of May 11, 2004 hearing.] Following that hearing, Bakri continued to fail to comply with discovery orders and the Secretary found it necessary to file additional motions.

Defendant has not only failed to comply with numerous discovery requests and orders of the court requiring production of documents, but he has also failed to comply with deadlines imposed by the Federal and Local Rules. Defendant Bakri has been granted repeated extensions and leave to file pleadings and documents after required deadlines have passed.

On September 13, 2004, the Secretary filed her Motion for Summary Judgment. A hearing took place on November 9, 2004. Bakri failed to file a response to the Secretary's motion for summary judgment before the hearing as required by the Local Rules. However, the Magistrate Judge considered a series of submissions made by the defendant after the hearing, some filed more than a month after oral argument. Nevertheless, now, more than eight months after briefing on Summary Judgment was completed, Bakri seeks to

supplement the record with additional documents and arguments. In this day and age there is no reason why records could not have been retrieved from Lebanon at any time during the litigation. The Secretary has been unable to review these documents and inquire into them. If these documents have any relevance they should have been produced long ago.

Through all of this Defendant Bakri repeatedly indicated that some of the records were in Lebanon. However, he never offered to obtain those records or suggested that retrieval of those documents was possible. Only now, after issuance of the Magistrate Judge's Report and Recommendation, does Bakri indicate that he has retrieved documents from Lebanon. Bakri has shown no good cause for his failure to retrieve the documents in a timely fashion. However, review the arguments Bakri now makes and of the documents he has now submitted will show that they create no material dispute of fact and provide no basis for granting the relief he seeks.

## ARGUMENT

### A. Defendant's Objections are without merit.

#### 1. Bakri did not keep the records required by the Fair Labor Standards Act,

Defendant's first objection is to the Magistrate Judge's finding that he did not keep records required by the Fair Labor Standards Act, 29 U.S.C.§201 *et seq.* (the "FLSA" or the "Act"). The Court's finding was expressly based on Bakri's admission, under oath in an examination by the Court, that he never kept records of the hours worked by the workers.

May 11, 2004 TR, at 44.[2] After Bakri testified that the original records had been removed by his mother and that other records had been destroyed in a flood, the Court inquired further:

> Q Did it [the missing records] show the hours worked each workday by an employee or did it simply say they worked the evening shift.
> A We explained to him very clearly. Nobody work under the hourly wage. They work per night. There's no hour. They come for example, at ten o'clock. If they finish their work by two or three, they can go.
> Q So they were paid a set rate for the cleaning job?
> A. Correct, Your honor.
> Q All right. So your records didn't reflect the hours that were worked each day by a person?
> A. *Never, Your Honor. [Emphasis added.]*

May 11, 2004 TR at 44.

This testimony is consistent with his deposition, in which he testified that he never paid overtime and never kept records of actual hours. [Bakri Deposition at 61.]

The Magistrate's Judge's finding is not that Bakri did not retain all the records required but that those records were never created in the first place. That position is clearly supported by Bakri's admissions at the May 11, 2004 hearing and in his deposition. The fact that at this late date Bakri has submitted some documents purporting to show hours worked by a few of the employees for brief periods, does not change the import of his admission that such records were not maintained.

[2] The complete May 11, 2004 transcript is filed with the Clerk of the Court as Document 50.

**2. The Magistrate Judge's finding that Bakri did not pay overtime is supported by the record.**

Defendant's second objection is to the court's finding that he failed to pay overtime. This, even though he expressly testified in his deposition that he never paid overtime, no matter how many hours they worked in a week. [Bakri Deposition at 61.] He argues, in effect, that employees never worked over 40 hours in a week. The records Bakri filed with his objections show some workers generally working twelve or thirteen days in a pay period. Even if the court were to accept the summary documents Bakri now submits purporting to show workers limited to seven hours a day, these records would indicate that some employees frequently worked from 42 to 49 hours a week. Bakri argued before the Magistrate Judge that in such pay periods when the total hours are divided into the gross wages, they exceed the minimum wage plus time and one half the minimum four hours over forty. However, Magistrate Judge Mayeron clearly shows in her memorandum why this method of backing out hours does not comply with the FLSA.

The records of Noe Villarreal, who worked in Louisiana, now submitted by Defendant, present a different problem. The records submitted with Defendant's objections purport to show that he worked only four hours a day. Among the factors in the record upon which the investigator based her conclusions, and upon which the Magistrate Judge reached her findings, was the statement of Noe Villarreal which is contained in the Clerk's records at Document 75, Redacted Exhibits and marked B-26 [Exhibit 4 part 4]. A copy of that statement is submitted herewith as Exhibit B. There, among other things, Villarreal states that at first he worked seven days a week and later

six days a week from 11:00 p.m. to 7:00 a.m., without breaks. He also stated:

> Each shift I would work at 2 stores which varied from night to night. I would spend the first three hours at the first store and then the rest of the night at the second store. I would drive my own vehicle between the stores. I would drive directly from one store to the next.[3]

The time sheets submitted by Bakri for Villarreal in support of his Objections show only work at one location. Thus, at most, they show only half the time worked. Interestingly, Villarreal states that after a while he was required to sign in and out and that those records should be accurate. The logs provided by Defendant with his objections are not sign-in sheets. Such records have been not been submitted for Mr. Villarreal. There is no explanation of why records from the Louisiana operations would have been shipped to Lebanon and included in the records purportedly obtained from Lebanon.[4] In any event, even if the Villarreal records submitted by Bakri at this time have any validity, they do not conflict with the record considered by the Magistrate Judge, which shows Villarreal working two stores each day. Even if accurate, the tell only half the story.

During the course of the litigation, Bakri insisted that although he did not keep daily hours records, the Work Orders maintained by ICM did contain such information See, for example the Transcript of Hearing of May 11, 2004 at 50. Therefore, the Secretary obtained the Work Orders from ICM. Those are the documents Bakri now challenges.

---

[3] Travel time between worksites must be compensated under the FLSA.

[4] In his current submission, Defendant states that all of the documents he now submits were retrieved from Lebanon. In his deposition he testified that all of his Louisiana records had been stolen. Deposition at 62. He does not explain how they have suddenly reappeared.

In response to the Secretary's motion for summary judgment, Bakri suggested that information on representative ICM Work Orders submitted by the Secretary had been tampered with or falsified. Now, Bakri submits the Affidavit of Raymond Hopkins [Bakri Exhibit 16]. Hopkins asserts that he was a driver for General Maintenance and that he entered the times recorded on the ICM work orders and that those entries reflect the time he picked up workers at their residences and returned them there at the end of the shift rather than actual work hours. No explanation is given for Bakri's failure to submit the Hopkins affidavit during the briefing on summary judgment. Hopkins was clearly available. He signed a certificate of service accompanying other documents during the litigation. See Exhibit C submitted herewith. More significantly, the ICM contract began in 2001, after Bakri's mother left the business and after any documents related to her business would have been shipped to Lebanon. There is no reason any of the ICM related materials could not have been presented in a timely fashion during discovery or, at the latest, during briefing on the motion for summary judgment.

**3. Bakri failed to pay the minimum wage to some workers in some workweeks.**

Bakri's third objection is to the Court's finding that he failed to pay the minimum wage in all weeks worked. As the Magistrate Judge pointed out, Bakri admitted withholding first pay period wages. He asserted that the wages were paid when the worker left the job. Aside from the fact that such delayed payment would not comply with the requirements of the FLSA, Bakri offered no evidence of such payments. The

Court carefully considered the declaration of the investigator and the documents upon which she reached her conclusions in reaching its decision. None of the records Bakri now submits address the minimum wage issue. He has presented no basis to reconsider this matter.

**4. The Magistrate Judge's findings regarding back wages are supported by the record and the law.**

As his fourth objection, Bakri once again bases his failure to provide records on the loss of certain records due to a flood and his assertion that other records were in the possession of his mother in Beirut, Lebanon. He contends he has now obtained records in Lebanon. However, the records he provided do not support his position and in some cases cover periods after his mother's involvement in the business ceased, and in other cases relate to his Louisiana operations, which he has long contended were not part of his mother's operations. Some of the documents Bakri has submitted do show wage payments, but they shed no light on the question of whether those payments reach the minimum wage or properly compensate for overtime hours.

Bakri argues that it is unfair to use the sample ICM Work Orders to compute back wages. But that is not what was done, either by the Secretary or by the Court. Some of the Work Orders, to which the Secretary was specifically directed by the Defendant, clearly demonstrate that workers did work over forty hours in some work weeks. Other Work Orders were incomplete. However, the back wage calculations were based on the complete investigation and do not depend on merely those few documents. Where information regarding individual variations in employment was known to the Secretary,

even though Bakri had failed to provide the information, that information was used in calculating back wages. For example, Bakri submits a summary of wages showing that Kendall Johnson was in jail from September 17, 2000 to November 15, 2005. Although aware of the imprisonment, the precise dates of Kendall's incarceration were not known to the investigator. Review of the Secretary's back wage calculations previously submitted shows that, based on the information available to the investigator, no back wages were computed for Mr. Johnson for a period of eight weeks during the Fall of 2000. See Exhibit D. This corresponds closely to the amount of time lost from work asserted by Mr. Bakri.

The Magistrate Judge addressed in detail the burdens on the parties in establishing back wages where the employer does not have complete records. The decision of the Magistrate Judge is well supported in law and fact.

**5. Liquidated Damages are appropriate in this case.**

Bakri's fourth objection is to the award of liquidated damages. His argument is based on his position that no underlying back wages are due. However, since there is no merit to his arguments regarding back wages, there is no basis to reconsider the applicability of liquidated damages in this matter, which are provided for in Section 16(c) of the FLSA, as pointed out by the Magistrate Judge in her Report.

**B. The documents submitted by defendant do not support his objections.**

Some of the records provided by Bakri in support of his objections raise more questions than they answer. For example, a handwritten wage summary apparently for

Maria Torres, appearing at Document 87, page 2, shows work in November and December 2000. However, the Floor Care Service Sign In/Out Log sheets for Maria Torres which are apparently provided to support the summary are clearly dated "12-9-02" and "12-2-02." Documents bearing dates in 2002 can not have been created in the regular course of business in 2000. While it may not be uncommon to confuse the year in the last weeks of one year and the first weeks of the next, it would be highly unusual to skip two years. These documents in which sign in and sign out times are provided in a uniform hand and manner are similar to other logs provided in support of Bakri's objections and raise questions about the legitimacy of those submissions as well.

Documents relating to Kevin Arango, Kendal Johnson, Noe Villarreal, Ivon Torres and Maria Torres, relate to employment in Louisiana. Those records bear a regularity of form and data that raises questions as to their legitimacy. As discussed before, Bakri has contended that the Louisiana operation was completely separate from that of Mrs. Hoteit.[5] He has offered no explanation of why those records would have been sent to Lebanon and could not have been produced in a timely fashion. Bakri also asserts, without any evidence, that work in Louisiana ended on December 23, 2000. However, the signed statement of Kevin Arango, contained in the exhibits previously filed with the court as Document 75, Redacted Exhibits and marked B-3 [Exhibit 4 part 1], submitted herewith as Exhibit E, demonstrates that those workers continued until at least December 27, 2000. Even one of the documents submitted by Bakri in support of his objections

[5] As noted above, in his deposition Bakri claimed all of the Louisiana records were stolen.

shows Noe Villarreal working two days after December 23. Villereal worked December 24 and 25 according to the documents Bakri submitted. See Document 87 P. 28 0f 47. Any dispute Bakri had with the information provided by Mr. Arango should have been presented to the court in his response on summary judgment. Not more than half a year later.

Defendant Bakri also submitted a summary of wages of Artemio Moreno [Document 87, page 41and 42.][6] These records show that he regularly worked two week pay periods of 12 and 13 days. Even if he only worked 7 hours as suggested by Defendant Bakri, he would have worked 42 to 49 hours in each work week.

Bakri has also included purported summaries of wages paid to Jorge Ruiz Comacho and Angel Bonilla Perez. The Perez document shows him working 11 to 13 days in a two week pay period, strongly suggesting that more than 40 hours was worked each week. But more significantly, these documents cover periods in the first four months of 2001, long after Ms. Hoteit's involvement in the business. There is no explanation of why those documents would have been shipped to Lebanon at such a late date and no other explanation of why they were not presented to the court in a timely fashion.

[6] In spite of repeated admonitions by the Court to serve all documents on the counsel for the Secretary, Defendant Bakri has not served his objections and supporting materials upon the Plaintiff. The Clerk's office scanned the documents and E-served the Plaintiff.

## Conclusion

At one point in his handwritten submissions, Defendant Bakri insists that in order to properly defend his case he would need the names of all of the employees as well as the dates on which they worked. To which, the Secretary adds, he would need a record of the hours worked each day. These are records that he was required to keep under the FLSA. But as he has repeatedly admitted, no such records were regularly created, much less maintained by the Bakri or anyone on behalf of the business.

During the course of this litigation Bakri repeatedly referred the plaintiff to the ICM records for the period occurring in 2001 as a source of time records, but now he repudiates those as well. Now he submits what purport to be logs of hours for a few weeks, at least some of which were clearly created well after the fact, and asks the court to determine that there is a genuine dispute of fact and reopen this case.

The Magistrate Judge gave Mr. Bakri many opportunities to obtain documents and to comply with her orders. The Magistrate Judge carefully evaluated and considered the available evidence in light of the applicable law. Defendant's objections to her Memorandum Opinion and Recommendation should be denied and judgment should be entered for the Plaintiff and against the defendant granting the relief recommended by the Magistrate Judge.

For the reasons set forth in the Magistrate Judge's Recommended Opinion and Order as well as those set forth herein, and in the Secretary's previous submissions and argument before the Court, the Report and Recommendation of the Magistrate Judge should be affirmed and judgment entered against the plaintiff in accordance her recommendation, together with the costs of this action and the costs previously assessed as sanctions by the Magistrate Judge.

Respectfully Submitted,

Dated September 2, 2005

**HOWARD M. RADZELY**
Solicitor of Labor
**JOAN E. GESTRIN**
Regional Solicitor

s/ Leonard A. Grossman
**LEONARD A. GROSSMAN**
Attorney

Attorneys for **Elaine L. Chao,**
Secretary of Labor,
United States Department of Labor,
Plaintiff

**P.O. ADDRESS:**
Office of the Solicitor
U.S. Department of Labor
230 South Dearborn Street
Room 844
Chicago, Illinois 60604
Telephone: (312) 353-5709

I hereby certify that the foregoing document complies with the provisions of Local Rule 7.1(c). The document contains 3,348 words, including headings and quotations, and 183 additional words in footnotes, exclusive of the caption and signature block, as calculated by Microsoft Office Word 2003.

s/ Leonard A. Grossman
Leonard A. Grossman
Attorney